Cases No. 2012-74, Stephenson v. Office of Personnel Management, Mr. McGill. Good morning, Your Honors. I want to thank you all for allowing me to come before you, Your Honors. Excuse my obvious nervousness because I'm not really used to arguing in front of a panel of judges. This is a case, Your Honors, that has to do with former federal employees who concurrently were receiving first disability retirement annuity. And I exclude CSRS because CSRS employees do not have the requirement of filing for social security disability concurrently. But that former federal employee who receives both the first disability retirement annuity concurrently with having the requirement to file for social security disability insurance, therefore then is approved and then receives both during the time period. Then, because of engaging in substantial... Counsel, to what extent do we owe deference under Chevron in this case? Deference certainly, in terms of interpretation of the statute, should be given. But I always tell my kids, you know, that deference should always be given first to truth and then to any precedence in law. What about under Chevron? What does Chevron say? As I recall, Your Honor, that it's deference to the interpretation, so long as there are certain criteria that are met, is my understanding of Chevron. Does it make a difference that OPM is interpreting an SSA regulation? I think that they're wrongly interpreting it, Your Honor, and I know that that doesn't go directly to the issue of deference. But one of the things that I wanted to... Well, Judge, just following up on Judge Rayna's question, I think the suggestion is under Chevron we have to give deference to a particular agency. But does that not apply when we're talking about OPM, one agency, interpreting the regulations with regard to another agency, HHS or social security within HHS? Yes, I don't think that it applies to the same extent in weight, Your Honor, especially because if you take a look at how social security interprets that statute and how they in fact act, it is in fact contrary to how OPM is taking that interpretation, taking it out of context and then applying it to the offset. Can I just move, just for my own edification, I just want to, these are not, more general questions. Maybe you're not able to respond and maybe the government can help me out here. I'm just trying to understand the program. Okay. You've got FERS, and FERS is generally, if you get a FERS disability payment, it's like what, 60% generally of your earnings? It's 60% of my earnings one time through the first year, and then it's reduced to 40%, and in that first year there's 100% offset in social security. Right, okay. Yes. Good. You're earning, as I understand it, somewhere in one of these opinions, that even if you're on FERS disability getting 60 or then 40% offset by social security if you're getting social security, you can earn up to 80% of your previous income? That's correct, Your Honor, and that, the reason why is because it's a very progressive self-paying system. What FERS and CSRS wanted to do from the very beginning is they wanted to encourage productivity. They didn't want people to simply get disability annuity and then simply sit back and enjoy their disability annuity. What they wanted to do instead was to have a progressive self-paying system. So if I retire on FERS disability and I can go out and earn 80% of the income, so essentially I'm collecting 120 or 140 the first year. Yes. Until age 62, at which point it's recalculated. It just seems quite unusual. Unusual, yes, Your Honor, but at the same time I would argue, Your Honor, that it's a very progressive paradigm in that it's trying to encourage a self-paying system. Because then people will go out into the private sector, make additional money, contribute, pay FICA, pay taxes and so forth, and pay right back into the system so that it's not simply a zero-sum balance where you're simply taking without paying back into the system. Susan, now let me go back to, okay, so now back to the system. You said under FERS it's unusual. You have to, in order to qualify for FERS, you have to apply for social security. That is correct. Does social security do automatically then, because you've qualified for FERS disability, get social security disability? No. You have to apply. Do you have to get it? No, you do not. So plenty of people, FERS disability, I apply for FERS disability, I apply for social security, I qualify for FERS, but I never qualify. Most people do never qualify for social security, and the reason is because social security has a higher standard of disability, of quote-unquote total disability. Okay. Whereas under FERS and CSRS, the standard is are you prevented from performing one or more of the essential elements of your particular kind of job, and therefore it's a recognition that you can't do your particular kind of job. Then if you are awarded the disability retirement under FERS and CSRS, you can go into the private sector and do something else productive, some other vocation that's unlike the one that you did. Okay. Now let me move you to this case. Is the number of your argument that while your client may have been eligible for social security, he wasn't getting it, right? There's no actual receipt, correct. Okay. Are we just talking about this 36-month period? Yes, we are. Okay. Because at the end of the 36-month period, he's kind of like off the rolls entirely if he's earning income from social security. Correct. So the government wouldn't be offsetting, and I can ask them, but I'm assuming, do we all agree that the government, we're only talking about offsetting during this period of eligibility? Well, this period of entitlement, I believe, is what the proper term is. That's correct. That 45-month... Well, I don't think you want to call it entitlement, right? No, actually, I am not reluctant or reticent to call it a period of entitlement, but I have to explain why. Well, you better explain because if both you and the government are calling it entitlement, the case is over, right? No, I'm calling it a period of entitlement, and there's a conceptual distinction. Let me just try to explain why. During that 45-month period, there's the initial nine-month period of entitlement where the social security disability insurance recipient receives both the social security, whatever payment, as well as whatever is received from the substantial gainful activity. That's, I think, as an encouragement to the individual to say, hey, go on and work. You're not losing... So you're not disputing. There was an offset. When he was getting benefits from those first nine months, there was the offset for... Absolutely. There's no disagreement about that first nine months. Now we go to the second 36 months. What social security is essentially saying is you don't get your social security anymore, your disability insurance payment, because you continue to engage in substantial gainful activity. Now, in any month, however, that the person, let's say, loses the job or is on a contract basis, doesn't get enough hours and falls below that substantial gainful activity, he then, in that month, is recalculated, essentially, and he gets his social security back. So you're not disputing that if, during that 36-month period, one stops working and gets your social security check that month, then there would be an offset. Absolutely. Absolutely. Now, what I'm arguing, Your Honors, is this. Look at the way that social security is acting with respect to entitlement or period of entitlement. They are, in essence, doing what OTAN is not doing in that they are offsetting. They are taking what the person is making, receiving, actual receiving, and, in essence, offsetting what the person should be receiving or could be receiving as entitlement to social security. Now, what OTAN does is take that out of the context and in a vacuum and says, ah, you're entitled to it, quote, unquote, even though you're not actually receiving it. We're going to offset, even though you're not actually receiving it, because we're going to use the term that social security uses of period of entitlement, even though you're not actually receiving it, and we're going to offset that theoretical non-receiving amount and continue it because, since they call it entitlement, we're going to continue to call it entitlement, and, therefore, we're going to offset it. But it's the action, if you think about it, it's the precise action of what social security is doing, which OTAN is not doing. Social security is taking the actual receipt from a private sector job and, essentially, offsetting it and saying, we're not giving you social security disability insurance because you're making money. OPM is taking that same argument and saying, well, even though you're not actually receiving it, we're still going to offset it. Interestingly enough, and I know that it's a non-presidential order and so forth, but what Administrative Judge Wagner says in her dissenting opinion in the non-presidential order is essentially what I'm saying now is that in any given month, if you take a look at the first statute, it specifically says, listen, in any given month, when the person isn't getting an offset, then it should be recalculated. If it's not, then it won't be recalculated. Well, I guess I'm a little troubled by your narrative because what the dissent says is she clearly, as she's understanding this, she's drawing a distinction between entitlement and eligibility. You seem here to have conceded that this is an entitlement of some sort, and so I'm not sure. If he is entitled, if you agree that under the social security rubric and the words they use, he is, during the 36-month period, entitled to those benefits every month during that 36 months, then it seems to me to have conceded along that case. I'm not conceding the concept and the definition of what it means to be entitled. I mean, it's interesting. I always tell my kids, you know, when somebody brings up Merriam-Webster Dictionary, I'm in trouble. Well, on page 12 of Respondents' Brief, they bring up the definition of entitlement, but interestingly, I think that entitlement from my law school days in law of possession and of property, entitlement means that you actually get titled to something, that you actually receive something, otherwise it's simply a mortgage that's a theoretical structure. And I'm not conceding the essence of what the term entitlement means. What I'm simply saying is that on its face, social security certainly uses the term period of entitlement, but the reason why they use that is because of a very pragmatic reason. Social security doesn't want the person who is going out and engaging in substantial gainful activity to have to reapply every month that he falls below earning that substantial gainful activity. That would be preposterous. Instead, what they're saying is that during that 36-month period, whatever it is that we're going to call it, we're going to readjust, adjust, give you social security or not, depending upon what kind of gainful activity you're doing. And it's a very progressive paradigm in doing so. And all I'm saying is that I'm not conceding the essence of the term entitlement, but rather simply conceding that social security uses the term period of entitlement, but in a particular narrow context, and that OPM is then taking that out of that narrow context, using the term entitlement in an inappropriate way. Okay. Let's hear from the other side. You have some rebuttal time left, Mr. McGill. Thank you very much, Your Honor. Mr. Scarlatoiu. Go ahead, Your Honor. May it please the Court. Your Honor, this Court should affirm the Board's decision upholding OPM's offset of Mr. Stevenson's FERS annuity for the social security disability benefits for which he is entitled. And in all, Your Honor, there are three reasons why this Court should uphold the Board's decision. First, the plain language of the FERS... So you're saying that he could have obtained those benefits just by asking for them? That's correct, Your Honor. During that issue of the 36-month period, and during that period Mr. Stevenson appears to have been working, it's not clear on the record, but to Your Honor's question, any month he did not work, I believe it's literally just picking up the phone and calling him to say, saying, I didn't work, I couldn't work, pay me. You're saying he was entitled in the months he did work? Yes, yes. Not just the month, but you just said in months he did not work, he could have obtained the benefits. But you also have said that even though he could not receive the benefits he was entitled to them? I can't put that together. Well, that's correct, Your Honor. Let me say it this way first. The plain language of being entitled to something doesn't necessarily mean you have to receive it. Maybe a helpful example is, as a federal employee... How can you be entitled if you can't ask for them? Well, because it doesn't necessarily mean there's not some sort of condition on it. And here the condition was Mr. Stevenson working or not during that period. You're saying there's something just unique about this 36 months, that once the 36 months have expired, if he's not getting Social Security, you're not upsetting that. You're saying there's something peculiar about this 36 months, that that somehow is an entitlement period, irrespective of whether or not you receive benefits? That's correct, Your Honor. Where are you getting that from? Well, I'm getting it from several sources, Your Honor. The most important is the plain language of what Congress intended in establishing this 36-month period. Why don't you show us what provisions you're looking at? Sure. This is the Social Security Statute 42 U.S.C. 423. And that's the provision that the first statute simply references, that the offset occurs to the extent to which... Is this in your... It's the beginning of the brief. It's on page 9. On page 9 we speak about the first statute, and the first statute simply refers to the Social Security statute. It starts on page 13. And so that's the statute that creates the meets and bounds of when someone is entitled to Social Security disability benefits. And so Section A of Section 423 first creates the floor. And it creates the floor by putting forth several enumerated categories, and says if you meet those categories and apply, then you are, in statute use of the word, quote, entitled to benefits. Okay, so now we have the floor established, we have to figure out where the ceiling is. And so Section A goes on for quite a bit. But here, as Mr. Stevenson has been discussing, we're talking about the 36-month period. And in that circumstance, where there is... All right, well, I don't understand. Can we just look at the statutory provision you were talking about? Because maybe I missed reading it, but I'm not seeing it. A says an individual who meets the statutory criteria and applies for disability benefits shall be entitled. That's correct. But then A1, as you cite it, seems to say that as to the termination of entitlement. So now we're not talking about entitlement, we're talking about termination of entitlement. It says, or subject to subsection E of this section, concerning an individual who engages in substantial gainful employment the termination month. Is that what we're talking about here? In other words, isn't the statutory provision saying that you're entitled to the benefits except in those months where you're substantially gainfully employed? No, Your Honor. If you look at subsection E, it doesn't say you lose your entitlement. It says the benefits shall not be payable in that month. And that's a critical distinction here. Well, I'm looking at your citation, and it says as to the termination of that entitlement. Those are your words. So that doesn't say as to that entitlement. It says as you're describing it as terminating the entitlement when he's substantially gainfully employed. I believe I overread the first portion of that. In the statute, it's a little confusing because there's many words involved. But the end of it says it's... Where's the end of it? The end of it? Okay. Well, it's the end of it for purposes of this section. If you're looking at the brief, it's the highlighted part where it says, in no event can the termination month be before 36 months following the end of the 36-month period. And that's the critical language where Congress is telling the Court and the world that in no event can individuals such as Mr. Stevenson lose their entitlement during this period. What about the statutory provision cited at page 10 of your brief? This is 8452, so forth. This would be the first statute, which is really what this Court is ultimately interpreting. Right. It's enlightened, but... Well, it says the amount of disability insurance benefit to which a new one is entitled to under SSA, and then it says, for a month in which the annuity commences or is restored, or if no entitlement to such disability insurance benefit exists for such months, the first month after which. I mean, doesn't it refer to the lack of entitlement, or is that talking about something else? No, that's speaking about something else. That's talking about the amount of the first annuity, Your Honor. What the key language in the first statute is really simply the offset provision, which is a different section, 8452A1A, which states for any month in which an annuity is entitled to both essentially an annuity under that, under the FERS, and to a disability insurance benefit under Section 223 of the Social Security Act. So again, the Court is using the word, excuse me, the Congress is using the word entitled. Now, the legislative history on the FERS statute isn't very clear in this area, and we cite the Johnston MSPB case where the board, excuse me, reviewed some of that. But what you do see is that there were some versions of the bill, the FERS Act, where Congress did use the word payable. So again, we have this what is payable versus what is entitled. Ultimately, Congress used the word entitled in its internal wisdom. So in using that word and simply referring to the Social Security Act, it requires this Court to go to the Social Security Act and understand what Congress's intent is for when a person is entitled. And again, that's the answer by Subsection A of the Social Security Act. We just went through that. It establishes a floor. It establishes a ceiling. And as under the Chevron test, Your Honor, that really satisfies the first problem. The Congress's intent is clear, that the plain language gives you the answer you need. But there's a second layer to this, Your Honor, and that is SSA's regulations. To the extent this Court might find some ambiguity in the Social Security Disability Statute, SSA made clear that this is exactly how it intended the Act to be interpreted. And that's found in several places. The first is where SSA defines the word entitled. That is 20 CFR 404303. Can I interrupt you before you answer? Of course. What possible policy consideration could drive the distinction made? I mean, right? I mean, you're eligible, but if you're not, whether we say you're entitled or not, he's not receiving the Social Security benefits for certain months. How can there be an offset of the Social Security benefit that he's received when he hasn't received it? Because he's working. And that's, Your Honor, I have to think about why one would receive disability benefits, and that's because you can't work. So Congress has created this 36-month period where essentially an individual can test his ability to work. Well, he's receiving, he can work up to 80% and still get his first disability. We can't assume that the policy is if you're available to work, you can't get first disability. Right, and Your Honor, I would say you can't assume the opposite either. And if Your Honor looks at the language of the statute and SSA regulations, SSA and both and the statute both go the other way. They say that that entitlement continues, because again, entitlement does not have to mean you receive that benefit. But what's the distinction then when the 36 months expire and he's still working, you're saying, and he's not getting Social Security, there's no offset. Nobody's disputing that, right? The government isn't going after him once 36 months expire. That's correct. So what's the distinction? Well, at that point, SSA determines that your disability is over and you lose your entitlement under the statute and under the regulations. So the situation changes. I understand there's sort of this odd bubble period that occurs, but under the statute, under SSA regulations, that period exists and this court must follow Congress' interpretation along with SSA's interpretation of that period. Now, I would also note, Your Honor, that the offset is not a one-to-one dollar-per-dollar offset, right? Under the statute, there's an offset of 100% of the SSA disability benefits the first year. After that first year, it's only 50%. And the same question, Your Honor, could ask is, well, why would Congress not want a one-to-one dollar-per-dollar offset? The legislative history isn't clear on that point either, but the statute's clear and here the regulations are clear on this particular point. What's the cap on SSA in terms of what disqualified him on any particular month for getting the SSA benefits in terms of how much he was working or how much he was earning? In contrast to FERS, it's a specific dollar amount, and I believe it's somewhere in the range of about $1,000 a month. So Congress has created, and there's no dispute that this is a valid regime, where you have Social Security benefits that extend to one level and then FERS, which goes up to a much higher level, 80% is a pretty significant peak. And so the question is, what happens in between? And here we have this regime created where SSA has created a 36-month entitlement bubble period where one can receive benefits simply by picking up the phone and receiving those benefits. Now, the majority here in the board characterized in a footnote as an opposite result leading to some sort of a windfall for him. And I don't really understand the windfall, given the way the whole system works. I mean, if he's gainfully employed, he can get FERS if he's gainfully employed, so he's not getting a Social Security benefit, but he's not getting an offset from the Social Security benefit. So I don't understand where the windfall applies if we disagree with you. Right. Your Honor, the extent of the windfall would be the extent of the work for profit, the income that the individual is making in lieu of... He's not getting Social Security benefits during that period, so where's the windfall? You're offsetting benefits which he's not receiving. I don't understand how not allowing that to happen gives him a windfall. What I believe the board was referring to is if the board were to hold otherwise and say you can work during the 36-month period and then you'll get your full FERS, that they would essentially consider that double recovery. Now you're going to get full FERS plus the income from your work, your profit. Right. And so that's your win. And that's what you're entitled to for everything outside of the 36 months. If you never qualify for Social Security, you're entitled to that as well. Well, Your Honor, I think then you're falling into Mr. Stevenson's trap, which is that entitlement has to mean receipts, right? But that's not how entitlement has... The work that he was doing for Social Security when he wasn't receiving the benefits during this 36-month period, would that also count it against the caps on FERS in terms of outside income? Yes, it would have been. So if it was substantial enough to make the 80 percent... Right, which also argues against why it would be the wrong call in my view. But the other argument that the board used was that it was somehow an administrative nightmare, right, to do otherwise. The government's not pressing that view here, is it? I mean, the whole system, we can all probably agree, is an administrative nightmare of sorts, but this is the, you know, Social Security is able to calculate on a month-to-month basis during the 36-month period. Why should it be any different for OPM? Right, Your Honor, yes, there would be some administrative difficulties, but if Congress says you have to do it, you know, we're not disputing that we have to do it. Right, that's not a rationale for not doing it, because it presents some other administrative requirements. Right, but the point here is that Congress isn't requiring OPM to do this. All they're requiring to do is determine whether an individual is entitled under the SSA Statute 223, and that's where this Court's likely... The main argument is this is a period of eligibility, so he is eligible every month out of this 30-month period, and that's sufficient. No, Your Honor, our argument would be that this period is a period of entitlement. I'm sorry, entitlement. Yes, entitlement. I meant to say entitlement. Right, and the point is that the plain language of the statute says, in no event would Mr. Stephenson not be entitled, so that's one. The second layer to this, even if this Court disagrees on that point, is SSA regulations define entitled as having applied and proving you're right, and that's it. And Mr. Stephenson relies on that definition, but nowhere do you see a mention of receipt, and that's where this Court's likely decision... Because he can't apply if his income is too high, so that's really where I'm having trouble. So he's entitled to receive it, but we're not going to give it to you because you can't apply? Because you can choose whether or not to work, and if you do work, then yes, you won't receive it. You won't receive it? For that month. But you're still entitled to it, so you can be entitled to something that we're not going to allow you to receive? Because you chose to work. Right. For example, Your Honor, as a federal employee, I'm entitled to a certain number of vacation days, and today I am entitled to a vacation day. However, I had a pretty important appointment, so I couldn't take it. But if Your Honor asked me, I would say yes, I am entitled to the day, just today's not a day that I can take it. Similarly, Mr. Stephenson was entitled throughout the 36-month period, and it just depended on whether he worked or not. So that entitlement was contingent on something that he could or could not do, but ultimately the entitlement remained. Is there a requirement under Social Security that if you're able to do it, that you go out and work? I mean, you're right, he's entitled, and he made a decision to go out and work. If he had a job offer to do X, Y, and Z, and he said, well, no, I'd rather just get my Social Security benefits, is that allowed? Is there some monitoring of that? During the 36-month period, Your Honor, it's essentially the honor system. Yes, he could make a phone call and say I didn't work, and maybe there's some checking, but generally, at least the benefits would be paid, or maybe they would audit that down the road. How do you respond to your opponent's statement that your interpretation creates a disincentive for people to get off a disability and go out to work, and thereby help augment the economy of the United States? Well, a couple points, Your Honor. First is that the FERS system requires an individual to apply for Social Security. There's a regulation not cited in the briefs where OPM requires an individual to apply for Social Security in order to receive FERS. So you have to do one in order to get the other. So essentially, that scenario did not exist. So you think that demonstrates that everybody thought about this disincentive, but they made a decision that they ought to do that, right? That's correct, Your Honor. Is that because they were trying to save some money under the FERS disability system? No, Your Honor. I believe it's because Social Security has tried to create this system where we try to get folks back to work, and therefore that 36-month period exists where your entitlement remains based on a very easy circumstance, that's whether you can work or not, and that can fluctuate from month to month during that period. Okay, I think we have the position. Thank you, Mr. Carolina. Mr. Regal? Thank you very much, Your Honor. In practical terms, I would like Your Honors to understand that it really would rarely be a waving sort of a graph where a person one month falls under and then goes over, so that in pragmatic matters, I don't think it would be an administrative nightmare, in that for most people who are going to work, they're going to maintain their substantial income for months on end, and so that it's very rare unless it's some sort of a contract. Yeah, but that's the whole SSA system. I mean, everything's an administrative nightmare, but they've accepted it. An SSA, for Social Security benefits, it's on a month to month. Sure, it is, Your Honor. That's the system they've created. So, it could be a nightmare because every month they might have to, he may go off and on and off and on, but that's the system, right? Yes, I would agree. But I'm just saying in pragmatic, real terms, I'm not sure whether or not, what percentage of the population would actually undergo that sort of a graph where it becomes... Well, and did your client for that, so did he generally for that whole 36-month period, was he gainfully employed? No, he actually lost his job. I believe, I don't want to be closing on this, but I think after about a year and a half, he lost his job. There simply wasn't enough work for him, and so he lost his job. And so then, I believe that he was allowed for Social Security for a couple of months, and then he went out, again, became gainfully employed. And the 36 months, I assume, have expired now. I believe so. And so, is he now on Social Security benefits because he's not gainfully employed? Yes, I'm not sure, Your Honor. But what he's seeking then is the period, that offset for the period of the 36 months in which he was gainfully, he was not receiving his Social Security benefits. In other words, he was gainfully employed. And of course, as far as the issue concerning the disincentive, while it is true that all FERS applicants and annuitants have to file for Social Security, it all depends upon how much effort you're going to put into it. So that if you apply for Social Security, you can put minimal effort in because all that is required under the FERS statute is a receipt showing that you filed. You don't have to put much effort into it. When Social Security asks for further information, for instance, you don't have to supply it. They'll then deny it. You'll get a denial letter, and you can then submit that denial letter to OPM, and OPM will say, you've satisfied the criteria under the FERS statute. As you mentioned, it's more stringent to get on, the requirements are more stringent for Social Security disability, typically, than under the FERS statute. Yes, that's correct. And so the disincentive, of course, is that at the time of a filing, a federal employee is going to say to himself, well, I can't do my particular federal job. Can I do something else? If I can do something else, then in all likelihood, I really don't want to get Social Security and get approved for Social Security. One final point, Your Honors, and that is that when we're talking about the common usage of a term or what a term means, such as entitlement, I want to reiterate, Your Honor, because I am not conceding the term entitlement, that there is a period of entitlement, but it is interesting, for instance, in the appendix SA-3, that Social Security itself, Carolyn Simmons, Associate Commissioner for Central Operations, uses that same term in what you and I and everybody would use in its common parlance, and that is, in the letter to Mr. Stevenson, she says, your payments continue during blah, blah, blah, and she says, you are not entitled to payments beginning September 2009 because you were doing substantial work. So Social Security itself uses that term entitlement in the way that everybody else understands it, and that is, in order to be entitled, you're receiving something. If you're not receiving something, then you're not really entitled to it. You might be in a period of entitlement or whatever else, but you're not receiving it, and so you're not entitled to it. Then, of course, the issue then turns to what it means to offset, and I think that just as importantly as the term entitlement is the term offset. How can you possibly offset a theoretical construct as opposed to an actual receipt of something? And that's what OPM is doing, is saying, you're getting a theoretical construct of an entitlement. We're going to continue to offset it, and Mr. Stevenson's argument is you can't offset something you're not receiving. Thank you very much. Okay, thank you, Mr. McGill and Mr. Scarlato. The case is taken under submission. Thank you.